IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT DISTRICT OF TENNESSEE
COLUMBIA DIVISION

FILED
U.S. DISTRICT COURT
MIDDLE DISTRICT OF TENN
MAY 11 2009

BY: _____
DEPUTY CLERK

RECEIVED
IN CLERK'S OFFICE
MAY 11 2009
U.S. DISTRICT COURT
MID. DIST. TENN.

**Rain Thomas Chesher**,
Plaintiff

Vs.

Docket / Complaint No. 1   09 MC - 0 0 0 9

**George Little**, Commissioner     )
Tennessee Department of Correction
                                    )    JURY TRIAL REQUESTED
**Damon Hininger**, President,
Correction Corporation of America(CCA);  )

**Steve Dotson**, Warden             )
Whiteville Correctional Facility(CCA);
                                    )
**C.O. Barkin**,
Whiteville Correctional Facility(CCA);   )

**Sgt. Earl Taylor**,                )
Whiteville Correctional Facility(CCA);
                                    )
**Lt. Pope or Lt. Polk**,
Whiteville Correctional Facility(CCA);   )

**Ms. Hickman**,                     )
Whiteville Correctional Facility(CCA);
                                    )
**Ms. Gardner**,
Whiteville Correctional Facility(CCA);   )
    Res

---

**COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
UNDER 42 U.S.C. § 1983**

---

I.   PREVIOUS LAWSUITS

A.   Have you begun other lawsuits in state of federal court dealing with the same facts involved in

this action or otherwise relating to your imprisonment? Yes ( ) No ( X )

1

B. If your answer to A is yes, describe each lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuit on another piece of paper, using the same outline.)

Plaintiff(s) _____

_____

_____

_____

Defendant(s) _____

_____

_____

_____

2. Court [ if federal court, name the district; if state court, name the county ]

_____

3. Docket number: _____

4. Name of judge whom case was assigned: _____

5. Disposition [ for example: was the case dismissed? Was it appealed? Is it still pending? ]

_____

6. Approximate date of filing lawsuit: _____

7. Approximate date of disposition: _____

II. PLACE OF PRESENT CONFINEMENT:

South Central Correctional Facility
555 Forest Ave.
Clifton, TN 38425

A. Is there a prisoner grievance procedure in this institution? Yes ( X ) No ( )

B. Did you present the facts relating to your Complaint in the state prisoner grievance Procedure? Yes ( X ) No ( )

[ In item B below, place the full name of the defendant in the first blank, his / her official position in the second blank, and his / her place of employment in the third blank. Use item C for the names, positions and places of employment of any additional Defendants. ]

B.  Name of Defendant:  <u>George Little, is employed as Commissioner at Tennessee Department of Correction.</u>

C.  Names of additional Defendants:  <u>Damon Hininger, President, Correction Corporation of America; Steve Dotson, Warden, Whiteville Correctional Facility; Ms. Barkin, Corrections Office, Whiteville Correctional Complex; Sgt. Earl Taylor, Correction Officer, Whiteville Correctional Facility; Lieutenant Pope or Polk, Correctional Officer, Whiteville Correctional Facility; Ms. Hickman, Nurse Practitioner, Whiteville Correctional Facility; Ms. Gardner, Medical Administrator, Whiteville Correctional Facility</u>

## IV. STATEMENT OF CLAIM:

[State here as briefly as possible the facts of your case. Describe how each defendant is involved. Include also the names of other persons involved, dates and places. Do not give any legal arguments or cite any cases or statutes. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. Use as much space as you need. Attach additional sheets if needed. ]

<u>The Petitioner states that his constitutional rights including but not limited to the 8th Amendment of the United States Constitution, the 14th Amendment of the United States Constitution were violated by the defendants. The acts of commission and acts of omission of the defendants caused serious bodily injury, devastating pain and suffering, continuing pain, and inflicted cruel and unusual punishment on the Petitioner. The Tennessee Department of Correction {TDOC} (George Little Commissioner), their agent, Correction Corporation of America {CCA} [ a corporation contracted by</u>

the TDOC to provide correctional services] (Damon Hininger President), Steve Dotson, Warden of the Whiteville Correctional Facility [a CCA facility operating under contract of the TDOC] failed in their administrative and supervisory duties, and others named herein specifically, did specifically and cumulatively cause the violations to the Petitioner.

1.  **THE STAFF OF CCA NEGLECTED THE SAFETY AND SECURITY OF THE PETITONER BY HOUSING INMATES OF DIFFERENT SECURITY LEVELS IN THE SAME HOUSING UNIT WHO SHOULD NOT HAVE BEEN HOUSED TOGETHER BASED ON EXISTING PROCEEDURES.** The defendants failed to assign and classify the Petitioner to the correct security designation. Had the Petitioner been classified correctly, he would have been at a minimum level of security. This was the case on December 29, 2008. At approximately 8:30 a.m. on December 29th 2008, the Petitioner was assaulted by first one, then two inmates together. The assault included the two assaultive inmates repeatedly stomping the Petitioner's leg, causing severe injuries including his leg being shattered and broken in six places requiring surgery, a steel plate, 12 screws, and 24 staples. According to the treating physician, it was a miracle that the leg was saved at all due to all of the damage.

These inmates were of a higher security level than that which the Petitioner **should have been at** due to their history of violent behavior, assaults, and robberies. By policy, they would have been prohibited from being housed together. The Petitioner had never been involved in any kind of violent behavior during his 10 years. Had the Petitioner been correctly classified correctly these events would not have occurred. The lack of due diligence, willfully disregarding established procedures in such important area of rights as safety and security directly resulted in the assault on the Petitioner. It is the ultimate responsibility of George Little (Commissioner - TDOC), Damon Lininger    , (President - CCA), and Steve Dotson, (Warden - Whiteville Correctional Facility - CCA) to ensure the correct security classification of all inmates and separate them accordingly, in order to prevent

5

violence and assaults such as occurred to the Petitioner.

## 2. THE STAFF OF CCA, SPECIFICALLY OFFICER BARKIN, WAS AN ACTUAL PARTICIPANT IN THE ASSAULT ON THE PETITIONER.

At approximately 7 a.m. on December 29, 2008, Correction Officer Barkin was operating the control panel of the Petitioner's housing unit. C.O. Barkin refused to allow the 40 inmates of unit I-F to enter the pod, causing them to be locked in the Sally Port for 15 minutes. This created a very dangerous situation to which the Petitioner repeatedly shouted to C.O. Barkin requesting to be allowed in the pod. These requests were ignored by C.O. Barkin until a Sargent came and ordered her (C.O. Barkin to open the Sally Port allowing the inmates to return to the unit. This same officer later assisted inmates in the assault of the Petitioner as described below, possibly out of retribution for this incident. Regardless if it was or was not retribution, C.O. Barkin was an active participant in the assault.

At approximately 8:30 a.m. on December 29th 2008, the Petitioner was in his cell located in I-F unit at Whiteville Correctional Facility. At that time, an inmate entered the Petitioner's cell without permission, shut the cell door locked behind him, and began to assault him violently and without provocation. At this point the above named inmate was in the Petitioner's locked cell and no other inmate could enter the cell without an officer at the control panel physically pressing a button, causing the door to open. Inmates could not enter the cell on their own without the cell being opened at the control panel. Correction Officer Barkin was operating the control panel of the Petitioner's housing unit and was in sole control of the locking and opening of cells in the Petitioner's unit. C.O. Barkin had been the regularly assigned officer at the Petitioner's unit for several months. During this time she became very familiar with this unit and the inmates housed there. The Petitioner's cell had long been occupied by the same two caucasian inmates. Both of the inmates were African American, and the Officer should have known that neither of these inmates belonged in the Petitioner's cell. At this time C.O. Barkin pressed the button which opened the door of the Petitioner's cell allowing a second inmate

6

who was waiting at the cell door, to enter the cell. This inmate joined in the assault, beating the Petitioner all over and stomping the Petitioner's leg, causing severe injuries including his leg being shattered and broken in six places requiring surgery, a steel plate, 12 screws, and 24 staples.

The willful and deliberate acts of commission by C.O. Barkin becoming an actual participant in the assault of the Petitioner, directly causing injury, amounted to cruel and unusual punishment. According to the treating physician, it was a miracle that the leg was saved at all due to all of the damage.

**3.    THE STAFF WILLFULLY DISREGARDED THE HEALTH AND SAFETY OF THE PETITIONER, FURTHER INJURING THE PETITIONER AND ELEVATING THE RISK OF FUTURE ASSAULTS AND INFLICTING ADDITIONAL GREIVOUS AND UNNECCESSARY PAIN.** One of the first officials to arrive was Sgt. Earl Taylor. When Sgt. Taylor first arrived at the cell, the Petitioner was the only person in the cell as the assaulting inmates had departed prior to the arrival. The Petitioner was on the floor in extreme pain. He was bleeding and his broken leg was at a impossible angle, all very visible to anyone. Sgt. Taylor immediately and repeatedly ordered the Petitioner to "get up against the wall". The Petitioner was obviously not physically able to comply and replied repeatedly saying "my leg is broke real bad, I can't move". Sgt. Taylor grabbed the Petitioner by the waistband of his pants and dragger the Petitioner's body over the shattered leg and toward the wall. Sgt. Taylor asked the Petitioner how he knew his leg was broken after he moved him causing extreme pain. Sgt. Taylor picked up the Petitioner's shattered leg and lifted the pant leg against the skin supporting the dangling foot. Seeing this startled Sgt. Taylor and he dropped the leg to the ground, again continuing to send unbearable pain throughout the Petitioner. The Petitioner felt the blinding flash of pain and all the bones seemed to be crushing and grinding together. This pain cause the Petitioner to pass out.

When the Petitioner awoke, another officer, Lt. Pope, was in the doorway and was asking the

Petitioner who had assaulted him. The Petitioner did not answer this question as his belief was that his response could cause additional assaults and even death if it became known that he had identified the two inmates who assaulted him. At that time Lt. Pope laughed at the Petitioner and asked again. The Petitioner told Lt. Pope that he was hurt very bad and begged him to get medical attention. Lt. Pope said, "We'll get you to medical just as soon as you tell us who did this to you". Lt. Pope gave the Petitioner the ultimatum that in order to receive medical attention for his shattered leg and other injuries, he must tell who had assaulted him. This ultimatum was made in the direct presence of gang members who would most certainly retaliate for the Petitioner's informing the names of the two involved with the assault. This put the Petitioner in the position of deciding whether to gain medical attention and put himself in imminent danger by providing information, or to not provide information and effectively deny himself of the very needed medical attention. At this point the Petitioner began to shake violently causing more pain and damage to his leg. No member of the staff even move to cover the shirtless Petitioner even though his was obviously in shock.

    The direct treatment of the Petitioner by Sgt. Taylor demonstrated that he must not have been adequately trained in either first aid or as a first responder as he caused further pain to the Petitioner beyond the initial assault. This further damaged the already severely damaged leg. Further, the lack of any response on the part of Lt. Pope to expedite medical care for the Petitioner, in fact his preventing medical care, caused the Petitioner to suffer cruel punishment and pain.

**4.    THE MEDICAL STAFF AT WHITEVILLE CORRECTIONAL FACILITY EFFECTIVE COMPLETE DISREGARDED FOR THE PETITIONER'S HEALTH AND MEDICAL NEEDS AADDED TO AND EXTENDED THE PAIN AND SUFFERING WAY BEYOND THAT WHICH WAS NECESSARY.**

    The medical staff treated the Petitioner with complete indifference as to the seriousness of his pain, suffering and his extensive injuries which continued the extreme pain. When the Petitioner was

finally transported to medical, they placed placed his leg in a steel splint / boot. The design of this boot was such that the top was open. The medical staff did not fully and correctly secure this boot to his leg. The staff repeatedly moved the Petitioner and his leg despite his loud protests that they must do it differently because every time his leg was moved by moving the unattached boot, his foot would be caused to dangle down and hang from the flesh of the broken portion of his leg. This was obvious, and was done repeatedly for no apparent medical reason.

As soon as the Petitioner was placed in the ambulance he was given Intra-venous pain medication, and received numerous additional injections up to the time of surgery. When he awoke after the surgery the evening of December 30, 2008, and until he left the hospital on January 2, 2009, he received injections of pain medication every four hours as well as pain medication in pill form due to the intensity of the pain. There was no doubt to the seriousness and traumatic nature of the injuries and surgery he received, warranting his continued receipt of pain medication. He received the last dose at approximately 5:00 p.m. on January2, 2009 prior to his leaving hospital at 6:00 p.m. The surgeon at the hospital told him he was sending a prescription for percocet ( 2 tablets, 4 times daily) to help deal with the pain. When returning to Whiteville Correctional Facility he asked Nurse Practitioner Hickman when he would receive his prescribed pain medication. Ms. Hickman told him he would not receive the medication adding insultingly that "she was not a legalized drug dealer". The medical administrator, Ms. Gardner, backed up Ms. Hickman. By these staff members totally ignoring and refusing to implement the sound medical advice of the surgeon who performed the procedure on the Petitioner, and who was the most qualified and knowledgeable of the Petitioner's medical needs, amounted to the willful infliction very real and wanton pain on the Petitioner in the face of medical instructions and for no reason other than to cause pain on the Petitioner. Because of this willful infliction of pain, the Petitioner suffered violent and uncontrollable spasms and convulsions that added pain in addition to that which he was already suffering.

On his return to Whiteville Correctional Facility on January 2, 2009, the Petitioner was placed in a "suicide watch cell" and left to deal with the pain and withdrawal from the medication completely on his on and with no true medical care. This cell was equipped with only a concrete slab in the middle of the floor, one blanket, a thin mat, toilet / sink combination, and a night light. There was no real light or electric outlets. The Petitioner suffered greatly while forced to stay in this "hole" that held nothing to assist in recovery or comfort to help reduce pain. This treatment and the denial of any pain medication could not be supported by any legitimate medical judgement.

On January 16, 2009 the Petitioner was transported to the hospital for a follow up visit to the surgeon, Dr. Kelly Pucek. Dr. Pucek put a hard cast on the Petitioner's lef and made an additional follow up appointment for three weeks. Dr. Pucek once again wrote the Petitioner a prescription for Percocet (2 tablets, 4 times daily) to deal with the pain of the injuries during recovery. He also sent a note to the medical staff at Whiteville Correctional Facility instructing them that the pain killers were very appropriate for anyone who had received the injuries and surgery that the Petitioner suffered.

The Petitioner never received the prescribed medication that his Doctor felt so strongly was both appropriate and necessary. The Petitioner suffered great pain and agony during this time. He also currently suffers serious chronic pain and will continue to do so as it may never subside.

## V. RELIEF

[State briefly EXACTLY what you want the Court to do for you. Make no legal arguments. Cite no statutes.]

The Petitioner asks this court for the following relief:

1. That the Petitioner be transfered to a Tennessee Department of Correction facility not contracted to Correction Corporation of America so he may receive the correct medical treatment for the injuries and receive true safety and security.

10

2.  That the Tennessee Department of Correction and Correction Corporation of America provide to the Petitioner all reports and medical records relating to this incident, any statements from staff, a list of all staff on duty during this incident, and any other material that may assist the Petitioner in this cause.

3.  That the Petitioner receive and pay that would have been due without this assault.

4.  That disciplinary and / or legal action be taken against any staff members and employees of Tennessee Department of Correction and Correction Corporation of America as related to this matter.

5.  That the Tennessee Department of Correction and Correction Corporation of America provide accurate and effective medical treatment to the Petitioner throughout any continuing confinement.

6.  That the plaintiff receive the sum of $500,000 for past present and future pain and suffering.

7.  That the plaintiff receive any and all punitive damages deemed appropriate by this Court to ensure that the Tennessee Department of Correction facility and Correction Corporation of America never allows anyone to be treated in this manner in the future.

8.  That the Respondents be responsible for all cost of this action.

Signed on this ___7th___ day of ___May___, 2009.

                                                *Rain Thomas Chesher*
                                                              Petitioner

According to 28 U.S.C. § 1746, I declare under the penalty of perjury that the foregoing is true and exact to the best of my knowledge, information, and belief.

5-7-09
Date

*Rain Thomas Chesher*
Petitioner

## DETERMINATION INDIGENCY

It appearing based on the Affidavit of Indigency filed in this Cause and after inquiry made that the Plaintiff is an indigent person.

_____

Honorable Judge

## DETERMINATION NON-INDIGENCY

It appearing based on the Affidavit of Indigency filed in this Cause and after inquiry made that the Plaintiff is not an indigent person because: _____

_____

_____

_____

Honorable Judge

## DETERMINATION INDIGENCY

It appearing based on the Affidavit of Indigency filed in this Cause and after inquiry made that the Plaintiff is an indigent person.

_____

Honorable Judge

## DETERMINATION NON-INDIGENCY

It appearing based on the Affidavit of Indigency filed in this Cause and after inquiry made that the Plaintiff is not an indigent person because: _____

_____

_____

_____

Honorable Judge

13