IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | | |
|---|---|---|
| RAIN THOMAS CHESHER, | ◊ ◊ ◊ | |
| Plaintiff, | ◊ ◊ | |
| vs. | ◊ ◊ | No. 09-1123-JDT/egb |
| STEVE DOTSON, et al., | ◊ ◊ ◊ | |
| Defendants. | ◊ ◊ | |

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT,
GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT, AND
DENYING PLAINTIFF'S MOTION TO DENY DEFENDANTS' MOTIONS

Plaintiff Rain Thomas Chesher, an inmate at the South Central Correctional Center, who was formerly housed at the Whiteville Correctional Facility ("WCF"), filed a complaint under 42 U.S.C. § 1983 in the United States District Court for the Middle District of Tennessee. That court granted Plaintiff's motion to proceed *in forma pauperis*, assessed the filing fee, dismissed claims against certain defendants, and transferred the remaining claims to this court.

Plaintiff has now filed a motion for partial summary judgment [DE# 68]. Defendants Steve Dotson, Tracey Hickman, Bradley Polk[1], and Earl Taylor have filed a motion for summary judgment [DE# 83], and Defendant Lyle Reece-Gardner has filed a motion for summary judgment [DE# 85]. Plaintiff filed a motion to deny Defendants' motions or, in the

---

[1] Defendant Polk is incorrectly listed in the complaint as "Pope."

alternative, to delay ruling on the motions for summary judgment [DE# 87]. Each party has filed a response to the opposing party's motion. For the reasons set forth below, Defendants' motions are GRANTED, and Plaintiff's motions are DENIED.[2]

Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he burden on the moving party may be discharged by 'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Revised Rule 56(c)(1) provides that "[a] party asserting that a fact cannot be or is genuinely disputed" is required to support that assertion by:

> (A)  citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers or other materials;[3] or
>
> (B)  showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

"If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)" the district court may:

> (1)  give an opportunity to properly support or address the fact;

---

[2] Defendant Betty Barkin has not filed a motion for summary judgment.

[3] "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Additionally, Rule 56(c)(4) specifically provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."

    (2)    consider the fact undisputed for purposes of the motion;

    (3)    grant summary judgment if the motion and supporting materials–including the facts considered undisputed–show that the movant is entitled to it; or

    (4)    issue any other appropriate order.

Fed. R. Civ. P. 56(e).

In Celotex Corp., the Supreme Court explained that Rule 56:

> mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof.

477 U.S. at 322-23. In considering whether to grant summary judgment, "the evidence as well as the inferences drawn therefrom must be read in the light most favorable to the party opposing the motion." Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986) (same).

A genuine issue of material fact exists "if the evidence [presented by the non-moving party] is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

> The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably

> find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict[.]"

Id. at 252; see also Matsushita, 475 U.S. at 586 ("When the moving party has carried its burden under Rule 56[(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." (footnote omitted)). However, the Court's function is not to weigh the evidence, judge credibility, or in any way determine the truth of the matter. Liberty Lobby, 477 U.S. at 249. Rather, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52.

Plaintiff alleges that, while confined at WCF, Defendants failed to classify him at the correct security level, and that, as a result, he was assaulted by two inmates on December 29, 2008. Plaintiff's injuries required surgery, a steel plate, twelve screws, and twenty-four staples. Plaintiff alleges that, had he been correctly classified, he would not have been exposed to the attack by the two inmates.

Plaintiff further alleges that Defendant Officer Taylor, one of the first responders to the incident, lacked the proper medical training to deal with his injuries and deliberately dropped him while transporting him to the medical unit. Plaintiff alleges that Defendant Officer Polk, also a first responder, refused his requests for medical attention and, instead, focused on the investigation into the attack.

Plaintiff alleges that, after his surgery, he was prescribed pain medication to be given upon his return to the WCF; however, Defendant Nurse Practitioner Hickman refused to give

it to him. Defendant Medical Administrator Gardner allegedly agreed with Defendant Hickman that Plaintiff should not receive pain medication. Plaintiff alleges that he was placed alone in a cell to deal with his pain and withdrawal from pain medication, with no "true" medical care. After a follow-up visit to his surgeon, he was again prescribed medication for his pain due to the severity of his injuries and the nature of his surgery; however, Defendants Gardner and Hickman allegedly did not give Plaintiff the medication. Plaintiff alleges that he continues to have chronic pain from his injuries.

Claim of Deliberate Indifference to Plaintiff's Serious Medical Needs

Under Estelle v. Gamble, 429 U.S. 97, 104 (1976), "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' ... proscribed by the Eighth Amendment." However, not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Id. at 105. "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." Id.

An Eighth Amendment claim consists of objective and subjective components. Farmer v. Brennan, 511 U.S. 825, 834 (1994); Hudson v. McMillian, 503 U.S. 1, 8 (1992); Wilson v. Seiter, 501 U.S. 294, 298 (1991). ; Brooks v. Celeste, 39 F.3d 125, 127-28 (6th Cir. 1994); Hunt v. Reynolds, 974 F.2d 734, 735 (6th Cir. 1992). The objective component requires that the deprivation be "sufficiently serious." Farmer, 511 U.S. at 834; Hudson, 503 U.S. at 8;

Wilson, 501 U.S. at 298.  "A medical need is serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  Ramos v. Lamm, 639 F.2d 559, 575 (10th Cir. 1980)(quoting Laaman v. Helgemoe, 437 F. Supp. 269, 311 (D.N.H. 1977)).

The subjective component requires that the official act with the requisite intent, that is, that he have a "sufficiently culpable state of mind." Farmer, 511 U.S. at 834; Wilson, 501 U.S. at 297, 302-03.  The official's intent must rise at least to the level of deliberate indifference. Farmer, 511 U.S. at 834; Wilson, 501 U.S. at 303.

A prisoner must plead facts showing that "prison authorities have denied reasonable requests for medical treatment in the face of an obvious need for such attention where the inmate is thereby exposed to undue suffering or the threat of tangible residual injury." Westlake v. Lucas, 537 F.2d 857, 860 (6th Cir. 1976).  The Court clarified the meaning of deliberate indifference in Farmer v. Brennan, as the reckless disregard of a substantial risk of serious harm; mere negligence will not suffice.  Id. 511 U.S. at 835-36.  Consequently, allegations of medical malpractice or negligent diagnosis and treatment fail to state an Eighth Amendment claim of cruel and unusual punishment.  See Estelle, 429 U.S. at 106.

In the present case, it is undisputed that Plaintiff's injuries resulted in a serious medical need, and, thus, Plaintiff has established the objective component of his claim. At issue is

whether Defendants were deliberately indifferent to that need both before and after Plaintiff's treatment at the hospital, i.e., the subjective component of his claim.[4]

Defendants have presented the following statement of facts which Plaintiff has not refuted [DE# 83-2].[5] At the time of the relevant events, Plaintiff was an inmate housed at WCF. According to Defendants' logs, Plaintiff was attacked about 7:54 to 7:56 a.m. on December 30, 2008. Medical staff and personnel, including Defendants Taylor and Polk, arrived within minutes, and the code was officially cleared at 8:02 a.m. Plaintiff was then transported to the prison's medical unit.

WCF personnel contacted EMS for an ambulance at 8:15 a.m., and EMS arrived at the facility at 8:32 a.m. to transport Plaintiff to an outside medical provider for further treatment. Upon Plaintiff's return to WCF on January 2, 2009, and until he was transferred to another facility on January 27, 2009, he made numerous visits to the medical infirmary for examinations and received  pain medication in the form of percogesic and ibuprofen and non-weight bearing crutches. He was placed in a single medical cell in the infirmary so that he could receive individual attention and specialized treatment for his injury. When he was discharged from the individual cell to return to the housing unit, he was given ibuprofen for his pain, and a follow-up appointment with Dr. Kelly Pucek was scheduled for January 16,

---

[4]     It is undisputed that Plaintiff  received appropriate treatment for his injuries at Jackson Madison County General Hospital.  It is also undisputed that Plaintiff was transferred from WCF on January 27, 2009, and, therefore, any alleged deprivation of medical care after this date cannot be attributed to Defendants.

[5]     The facts are stated for the purpose of deciding this motion only. Although Plaintiff has disputed some of Defendants' facts, those facts are not material to the determination of the pending motions, as discussed below.

2009. A note from Dr. Pucek dated January 16, 2009, states "may give Lortab or Percocet for pain," but does not state any milligram amount and indicates that substitution is permissible.

Defendants Taylor and Polk

Defendants have provided evidence that Defendant Taylor is not a licensed medical provider and has never held himself out as such. After the altercation had been stopped and Plaintiff informed Defendant Taylor that he was injured, Defendant looked at Plaintiff's leg. Plaintiff passed out as Defendant was looking at the injury. Defendant then transported Plaintiff to the medical unit. Because Plaintiff was attacked on the second level in Plaintiff's pod, it was necessary for Defendant to carry Plaintiff down a flight of stairs. In response, Plaintiff alleges that Defendant Taylor ordered him to get up against the wall despite being told that his leg was broken and then dragged him to the wall and dropped him.

Assuming arguendo that Plaintiff's statements are true, Defendant Taylor is still entitled to summary judgment. Even if Plaintiff did tell Defendant that his leg was broken (a fact that has not been established), neither Plaintiff nor Defendant could know the seriousness of Plaintiff's injury in the chaotic moments immediately after the attack. Defendant, as a prison officer, was charged with stopping the altercation and clearing the area. An officer in Defendant's position could reasonably have told Plaintiff to "get up against the wall," and, when Plaintiff could not or did not comply, could have moved him out of harm's way. When transporting Plaintiff down a flight a stairs so that he could receive medical attention, it is possible that Defendant Taylor could have bumped Plaintiff's leg or even dropped him. However, there is nothing in those facts, if true, to show that Defendant Taylor was

deliberately indifferent to Plaintiff's broken leg. Instead, Defendant insured Plaintiff's safety while he was still in the cell and then made sure that he received medical care as quickly as possible.

Plaintiff contends that Defendant Polk delayed his medical treatment.[6] Plaintiff's Facts, DE# 68-2, at p. 7. Defendant Polk's affidavit states that, when he ascertained that Plaintiff was injured, he called for medical assistance and then went to observe the escort of another inmate away from the area. The undisputed evidence shows that, even if Plaintiff's injury occurred at 7:54 a.m., the earliest that it could have occurred, he was brought to the medical unit no later than 8:15 a.m.. During that time period, Defendants had to clear the area of the other inmate(s) and transport Plaintiff down a flight of stairs. Thus, any delay was de minimus. Furthermore, Plaintiff has not refuted Defendants' evidence that Defendant Polk's responsibilities during the incident included removing the other inmate(s) from the area and that Defendant Taylor was the officer charged with taking Plaintiff to the medical unit.

Because the undisputed facts show that Defendants Taylor and Polk did not exhibit a "reckless disregard of a substantial risk of serious harm" toward Plaintiff, they are entitled to judgment as a matter of law on this claim.

Defendants Hicks and Gardner

Plaintiff contends that Defendants Hicks and Gardner deliberately withheld pain medication that had been prescribed by Dr. Pucek. Specifically, he states that Dr. Pucek prescribed one to two Percocet, even four to six hours, as needed. He also states that, as part

---

[6] Plaintiff also alleges that Defendant Polk placed him "in imminent danger by interrogating him in close proximity of gang members." DE# 91 at p. 24. However, no evidence has been offered that Plaintiff was actually put in danger or injured in any way by the alleged interrogation. Furthermore, it was reasonable for Defendant Polk to question Plaintiff and anyone else involved in the incident as soon as he arrived on the scene.

9

of his discharge plan, his leg was supposed to be elevated and an ice pack applied as needed and that he did not receive the ice pack. Plaintiff states that WCF has a policy and procedure that allows its employees too much discretion in interfering with a treatment plan established by an outside physician.

Defendant Gardner is the Health Service Administrator at WCF and, as such, supervises the nurses. The doctors and nurse practitioners, including Defendant Hickman, are not under her supervision, and, therefore, she played no part in determining Plaintiff's medical treatment. Gardner Declaration, DE# 85-3. Plaintiff has not refuted Defendant's declaration, and, therefore, she is entitled to summary judgment.

Defendants' evidence states that, pursuant to TDOC and WCF policy, WCF's medical personnel review notes and suggestions by outside medical providers, but the ultimate decision concerning medical treatment for inmates lies with the facility's medical provider based on their own assessment. Defendant Nurse Practitioner Hickman reviewed Dr. Pucek's notes, and, in conjunction with the medical assessments performed by WCF medical staff, decided what pain medication that Plaintiff should receive. Pursuant to policy, Lortab and Percocet are not given to inmates because they are controlled substances.  Hickman Declaration, DE# 83-5. When Plaintiff returned to WCF, he was given an ice pack to reduce the swelling on his leg, a five day prescription for pain, and a two week prescription for non-weight bearing crutches. He was placed in a single medical cell in the infirmary so that he could receive individual attention. After Plaintiff's follow-up visit with Dr. Pucek, Defendant Hickman issued Plaintiff another prescription for percogesic and for the crutches. Id.

It is undisputed that Defendant Hickman did not follow Plaintiff's post-operative treatment plan that was set by Dr. Pucek. The question before the court is whether WCF's policy of allowing its medical staff to substitute its own judgment for that of an outside practitioner, specifically by substituting non-narcotic pain medication for that prescribed by the outside practitioner, violated Plaintiff's constitutional rights. The court finds that it does not.

The court in Gibson-Riggs v. Grant Co. Det. Ctr, 2010 WL 1050071 (E.D. Ky.), looked at this same issue and explained that:

> Although the Sixth Circuit Court of Appeals has yet to address the specific issue of whether prison officials evince deliberate indifference to an inmate's serious medical needs when they substitute non-narcotic pain medication for the narcotics prescribed by the inmate's outside treating physician, the Court notes that other courts that have considered such allegations of medication substitution have found them insufficient to establish liability under the Eighth Amendment. See, e.g., Baez v. I.N.S., No. 06-30112, 2007 WL 2438311, at *2 (5th Cir. Aug.22, 2007) (per curiam) (holding that substitution of non-narcotic pain medication for prescribed narcotics due to prison policy prohibiting narcotics failed to state a claim of deliberate indifference); Huard v. Essex County Corr. Ctr., No. CIV.A. 08-120S, 2009 WL 1886050, at *3 (D.N.H. May 21, 2009) ("The disagreement concerning the use of narcotic pain medication is insufficient to state a claim under 42 U .S.C. § 1983); Steele v. Weber, No. CIV 06-4001, 2006 WL 3544719, at *7 (D.S.D. Dec.8, 2006) ("Although plaintiff and his previous doctor ... disagree with the Department of Corrections' refusal to allow inmates to use narcotic pain medications, mere disagreement with treatment decisions does not rise to the level of a constitutional violation." (quotations omitted)).

2010 WL 1050071 at *7 n. 5. C.f. Sobczak v. Spitters, 2010 WL 1265179 (W.D. Mich.) (Allegation that medical personnel "failed to honor" a pain medication prescription by an outside doctor, which is merely a professional disagreement regarding treatment options, was not sufficient grounds for an Eighth Amendment claim although plaintiff stated a claim by

11

asserting that the medical personnel did not examine him, falsified a medical record to suggest that he did, and refused to place him on any pain management program). Accord Moses v. Coble, 2001 WL 1450705 (6th Cir.) (Plaintiff's dissatisfaction with the defendant prison officials' decision to respond to his back pain with over-the-counter medications does not implicate Eighth Amendment concerns.).

In the present case, Plaintiff's claims do not rise to the level of an Eighth Amendment violation. The undisputed evidence presented by Defendants shows that Plaintiff was taken to the prison medical infirmary within minutes of the attack and an ambulance was called and he was being transported to a hospital for further care and treatment within forty-five minutes of the incident. Upon his return to the prison after surgery, Defendant Hickman assessed Plaintiff's medical needs and authorized a non-narcotic pain reliever, along with crutches and ice.[7] When a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, as in the present case, "federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." Westlake, 537 F.2d at 860 n. 5. The policy implemented by WCF for medical treatment for inmates who have seen an outside practitioner and as the policy was applied to Plaintiff did not constitute deliberate indifference to his serious medical needs. Consequently, Defendants are entitled to summary judgment on this claim.

### Claim of Deliberate Indifference to Plaintiff's Safety

---

[7] Although whether Plaintiff was given ice for his leg after his return to WCF is in dispute, it is not material to the determination of the pending motions. See Kennelly v. Faghihnia, 2007 WL 2901696 (E.D. Mich.) * 9 (citing Pendergrass v. Hodge, 53 F. Supp.2d 838 (E.D. Va.1999) (denial of prescribed acetaminophen **and ice for swelling** following prisoner's fall was not a sufficiently serious deprivation to come within the ambit of the Eighth Amendment's protection) (emphasis added)).

The Eighth Amendment imposes a duty on prison officials "to protect prisoners in custody from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833 (1994) (quotation omitted). Specifically, the Eighth Amendment forbids the "unnecessary and wanton infliction of pain." Id. at 834 (citing Wilson v. Seiter, 501 U.S. 825, 834 (1991)). When the harm is perpetrated by another prisoner, rather than by a government official, the claim is characterized as one of "conditions of confinement," rather than of "excessive use of government force." Thaddeus-X v. Blatter, 175 F.3d 378, 400-01 (6th Cir.1999) (citations omitted).

Not every injury suffered by a prisoner results in constitutional liability against a prison official. In order to succeed on a claim based on the violence of a fellow inmate, a plaintiff must show that: (1) the deprivation alleged is, objectively and sufficiently serious and (2) the prison official had a sufficiently culpable state of mind.[8] Farmer, 511 U.S. at 834. A sufficiently culpable state of mind is one of deliberate indifference to the inmate's health and safety. Id. In defining deliberate indifference, the Farmer Court held:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Id. at 837; Thaddeus-X, 175 F.3d at 402.

Using the analysis set forth in Farmer, as to the objective element, it is undisputed that the harm caused to Plaintiff was sufficiently serious. However, as to the state of mind

---

[8] As with the claim for deliberate indifference to a serious medical need, the test for deliberate indifference to a prisoner's safety contains both a subjective and an objective component. Farmer, 511 U.S. at 837-38.

13

element-whether there was a deliberate indifference to inmate health and safety-the court finds this requirement has not been met.

The question under the deliberate indifference prong of the conditions of confinement analysis is whether each defendant knew of, and disregarded, an excessive risk. "To satisfy the subjective component, the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." Comstock, 273 F.3d at 702. Plaintiff has presented no evidence that Defendants knew or should have known what was occurring in Plaintiff's cell or that such an incident might occur. Plaintiff has not established that Defendants had any opportunity or means to prevent the incident that occurred in his cell.

The Sixth Circuit has rejected similar claims about inmate safety when a plaintiff has not alleged and/or cannot show "pervasiveness of inmate-on-inmate violence" or that similar attacks occurred during a specific prison official's tenure. See Middlebrook v. Tennessee Department of Correction, 2010 WL 3432687 (W.D. Tenn.) (citing Hester v. Morgan , 2002 WL 31640469 (6th Cir.2002). In order to establish deliberate indifference, a plaintiff must show that a prison official had personal knowledge of a particular problem specific to the plaintiff or of threats against the plaintiff. 2002 WL 31640469 at *3-4. When a prisoner alleges that an assault occurred due to a lack of classification system, the prisoner must show a relationship between specific instances of physical violence between inmates and the facility's lack of a classification system. See Thompson v, County of Medina, 29 F.3d 238, 242-43 (6th

Cir. 1994). In the present case, Plaintiff has not done so, and, thus, Defendants are entitled to summary judgment on this claim.

## Claim Against Defendant Dotson

Defendant Dotson, who was the warden at WCF at the time of Plaintiff's alleged constitutional deprivation, is entitled to summary judgment. The mere fact that a defendant is in a position of authority does not allow imposition of liability against him because there is no respondeat superior liability under § 1983. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691, (1978); Copeland v. Machulis, 57 F.3d 476, 481 (6th Cir. 1995); Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir. 1984)(liability under § 1983 in a defendant's personal capacity must be predicated upon some showing of direct, active participation in the alleged misconduct). In order for supervisory liability to attach, a plaintiff must prove that the official "did more than play a passive role in the alleged violation or showed mere tacit approval of the goings on." Bass v. Robinson, 167 F.3d 1041, 1048 (6th Cir. 1999)(citations omitted). A plaintiff must show that the official "either encouraged the specific incident of misconduct or in some other way directly participated in it." Sheehee v. Luttrell, 199 F.3d 295, 300(6th Cir. 1999)(citations and quotations omitted). At the very least, "a plaintiff must show that the official ... implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." Id.

Plaintiff has not made this showing as to Defendant Dotson.[9] There is no evidence that Defendant Dotson had any personal involvement in the events that gave rise to the complaint.

---

[9] Plaintiff contends that Defendant Dotson had a policy or custom of interfering with inmates' follow-up treatment. However, he has offered no evidence to support this contention, other than pointing to his own situation.

15

Defendant has presented evidence that he does not have any control over an inmate's classification and/or the facility that an inmate is housed at and Defendant Dotson had no personal interaction and/or communication with Plaintiff on December 30, 2008, before or after he was injured, or after his return to WCF on January 2, 2009 [DE# 83-2]. Therefore, Defendant is entitled to judgment as a matter of law.

## Summary and Conclusion

For these reasons, Plaintiff's motion for partial summary judgment [DE# 68] is DENIED. The motions for summary judgment of Defendants Steve Dotson, Tracey Hickman, Bradley Polk, and Earl Taylor [DE# 83] and Defendant Lyle Reece-Gardner [DE# 85] are GRANTED. Plaintiff's motion to deny Defendants' motions or, in the alternative, to delay ruling on the motions for summary judgment [DE# 87] is DENIED.[10]

IT IS SO ORDERED.

 s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE

---

[10] Defendant Barkin is the sole remaining defendant. The matter is now ripe for a scheduling conference with Magistrate Judge Edward Bryant.